IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

QUALITY CUSTOM RAIL &          §
METAL, LLC,                    §
                               §
                   Plaintiff,  §
                               §  Civil Action No. 3:13-CV-3587-D
VS.                            §
                               §
TRAVELERS CASUALTY AND         §
SURETY COMPANY OF AMERICA,     §
                               §
                   Defendant.  §

MEMORANDUM OPINION
AND ORDER

The instant motion to transfer under 28 U.S.C. § 1404(a) presents the questions

whether the plaintiff—who is suing as a non-signatory to recover under a surety bond for

unpaid labor, materials, and equipment furnished on a construction project—is bound by the

bond's forum-selection clause under the doctrine of direct-benefits estoppel, and, if so,

whether the plaintiff has shown that extraordinary circumstances unrelated to the

convenience of the parties clearly disfavor a transfer.  Concluding that the plaintiff is bound

by the forum-selection clause and that it has failed to show such extraordinary circumstances,

the court grants the motion and transfers this action to the Eastern District of Louisiana.

I

Defendant Travelers Casualty and Surety Company of America ("Travelers") issued

a surety bond to Carl E. Woodward, LLC d/b/a Woodward Design & Build ("Woodward")

for a construction project in New Orleans, Louisiana.  The bond covers labor, materials, and

equipment furnished for use in the performance of the project.  Woodward hired plaintiff

Quality Custom Rail & Metal, LLC ("Quality Custom") to perform certain work on the

project.  Quality Custom alleges that Woodward has not paid it for labor, materials, and

equipment, and it sues Travelers, as surety, to recover under the bond.

The bond contains a clause that states, in pertinent part: "No suit or action shall be

commenced by a Claimant under this Bond other than in a court of competent jurisdiction

in the state in which the project that is the subject of the Construction Contract is located[.]"

(the "forum-selection clause").  D. Am. Mot. Ex. A at § 12.[1]  Quality Custom filed this

lawsuit in Texas state court, and Travelers removed the suit to this court based on diversity

of citizenship.  In Travelers' amended notice of removal, it asserts that "[v]enue is proper in

[the Northern District of Texas] under 28 U.S.C. § 1441(a) because the state court where the

action has been pending is located in this district and within this division."  Am. Not. of

Removal ¶ 10.  Relying on the forum-selection clause, Travelers now moves to transfer the

case under 28 U.S.C. § 1404(a) to the Eastern District of Louisiana.[2]  Quality Custom

opposes the motion.

---

[1]The court cites the record in this manner because Travelers did not include the document in an appendix, as N.D. Tex. Civ. R. 7.1(i)(1) requires.

[2]Travelers initially moved under Fed. R. Civ. P. 12(b)(3) to dismiss and transfer venue.  Shortly after the motion became ripe, the Supreme Court decided *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, ___ U.S. ___, 134 S. Ct. 568 (2013).  Because *Atlantic Marine* appeared to materially impact how Travelers' motion should be framed and decided, the court granted Travelers leave to file an amended motion.

II

28 U.S.C. § 1404(a) codifies "the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, ___ U.S. ___, 134 S. Ct. 568, 580 (2013). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In cases where there is no forum-selection clause, district courts "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 134 S. Ct. at 581. They analyze § 1404(a) motions under the familiar private- and public-interest factors[3] and "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 581 (quoting § 1404(a)).

But in cases where there is a valid forum-selection clause, "[t]he calculus changes" because the clause "'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). In that circumstance, district courts must "adjust their usual § 1404(a) analysis in three ways." *Id.* "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the

---

[3]In *Atlantic Marine* the Court identifies non-exclusive private- and public-interest factors. *Atl. Marine*, 134 S. Ct. at 581 n.6.

parties bargained is unwarranted." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer . . . should not consider arguments about the parties' private interests." *Id.* at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* Accordingly, in a case involving a forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 575.

III

The court first considers a threshold issue—whether Travelers has waived or is judicially estopped from moving to transfer venue. Quality Custom contends that Travelers has waived any objection to venue because it removed the suit on the basis of diversity jurisdiction and acknowledged in its amended notice of removal that venue is proper in the Northern District of Texas. *See* Am. Not. of Removal ¶ 10. Travelers replies that removing a case from state to federal court does not preclude a party from later moving to transfer the case to another federal forum.

The court concludes that Travelers' motion to transfer is not precluded by waiver or judicial estoppel. The sole basis for Quality Custom's contention is that Travelers asserted in its amended notice of removal that venue is proper in the Northern District of Texas. According to Quality Custom, this is a judicial admission that this lawsuit should be brought in this district. The court disagrees. This assertion was likely made to establish compliance

- 4 -

with the removal requirement of 28 U.S.C. § 1446(a), which provides that "[a] defendant . . . desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending[.]"  But even if it was not, the fact that venue is proper in the Northern District of Texas does not foreclose Travelers from arguing that this case should be transferred to the Eastern District of Louisiana.[4]  "[Section] 1404(a) does not condition transfer on the initial forum's being 'wrong.'"  *Atl. Marine*, 134 S. Ct. at 579; *compare* 28 U.S.C. § 1406(a), *with id.* § 1404(a). That venue is proper in this court is not inconsistent with the assertion that the case should be transferred to another venue under § 1404(a).  In fact, § 1404(a) contemplates cases where venue is proper in multiple fora.  *See, e.g., Atl. Marine*, 134 S. Ct. at 579 (noting that § 1404(a) "permits transfer to any district where venue is *also* proper." (emphasis added)). The court therefore declines to hold that Travelers' motion is precluded based on waiver or judicial estoppel.

## IV

The court now considers whether Quality Custom is bound by the bond's forum-selection clause, and, if it is, whether it has shown that extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer.

---

[4]Indeed, if Travelers wanted to exercise its right to remove the case to federal court, it was *required* to remove it to the Northern District of Texas; it could not have removed it directly to the Eastern District of Louisiana.  *See* 28 U.S.C. § 1441(a).

A

Quality Custom argues that *Atlantic Marine* is not controlling because its reasoning is predicated on the idea that the party opposing transfer has previously agreed to litigate in a chosen forum and that a district court's decision not to give controlling weight to the forum-selection clause would upset the parties' settled expectations. Quality Custom maintains that this rationale is inapposite because it did not agree to bring its claims in Louisiana, and there are therefore no settled expectations to upset. It posits that, because it was not a party to the surety bond between Travelers and Woodward, *Atlantic Marine* does not apply, and the court should conduct the typical § 1404(a) analysis. Travelers replies that Quality Custom is bound by the forum-selection clause, despite its non-signatory status, because it is attempting to derive a benefit from the surety bond.

B

The court concludes that Quality Custom is bound by the forum-selection clause under the doctrine of direct-benefits estoppel.[5] Direct-benefits estoppel is a doctrine that has been

---

[5]The question whether federal or state law controls on this question is unsettled in this circuit. *See, e.g., Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 558-59 & n.2 (5th Cir. 2011) (not deciding whether federal or state law applies to question whether non-signatory is bound by arbitration agreement); *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 314 & n.4 (5th Cir. 2011) (same); *Harland Clarke Holdings Corp. v. Milken*, ___ F.Supp.2d ___, 2014 WL 468840, at *12-13 (W.D. Tex. Feb. 4, 2014) (discussing lack of clarity on issue). In *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260 (5th Cir. 2004), the Fifth Circuit noted that nearly all federal circuits faced with the question whether a non-signatory is bound by an arbitration provision contained in a contract on which it sues have applied the federal law of arbitrability to resolve the issue. *Id.* at 267 n.6. The panel agreed with this trend and noted that there is no reason to think that applying state law would have yielded a different result. *Id.* In *Todd v. Steamship Mutual Underwriting Ass'n (Bermuda) Ltd.*, 601

- 6 -

developed in the arbitration context.  The doctrine applies to "non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006) (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001)) (internal quotation marks omitted).  "A non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010).  Although the doctrine is most often applied to arbitration clauses, it also applies to forum-selection clauses. *See Hellenic*, 464 F.3d at 520 (binding non-signatory to a contract's forum-selection clause

---

F.3d 329 (5th Cir. 2010), however, the Fifth Circuit noted that "state law controls whether an arbitration clause can apply to nonsignatories."  *Id.* at 336 (relying on *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)).  In the present case, the court will apply federal law because the parties appear to agree that it applies, and because it appears that the outcome would be the same under state law (Texas and Louisiana both appear to recognize the theory of direct-benefits estoppel). *See Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1074 (5th Cir. 2002) ("Texas courts have found non-signatories bound to arbitration agreements in only two situations: first, where the non-signatory sued on the contract; and second, where the non-signatory was a third-party beneficiary of the contract.") (Texas law); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001) ("But a litigant who sues based on a contract subjects him or herself to the contract's terms."); *Sturdy Built Homes, L.L.C. v. Carl E. Woodward L.L.C.*, 82 So.3d 473, 478 (La. App. 2011) (affirming decision to apply equitable estoppel doctrine to enforce arbitration clause against non-signatories).  "Where there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis." *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citation omitted).

under direct-benefits estoppel theory); *Harland Clarke Holdings Corp. v. Milken*, ___ F.Supp.2d ____, 2014 WL 468840, at *18 (W.D. Tex. Feb. 4, 2014) ("However, the Court holds that, when a party is 'bound by' a contract, it is subject to the terms of the contract that resulted from the bargained-for exchange, regardless of whether it itself bargained for those terms."); *Compana LLC v. Mondial Assistance SAS*, 2008 WL 190522, at *4 (N.D. Tex. Jan. 23, 2008) (Fitzwater, C.J.) (noting that direct-benefits estoppel grants signatory right to enforce contractual provision against non-signatory); *cf. Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause[.]").

Quality Custom is bound by the bond's forum-selection clause by direct-benefits estoppel. It knowingly sought and obtained a direct benefit from the bond because it acknowledges that the "surety bond was an inducement, upon which [it] relied, in order to perform the work on the Project." Pet. § III. It also seeks to enforce the terms of the bond, and its claim must be determined by reference to the contract, because it "seeks to recover on the bond, and brings this suit against the surety for recover[y] on the bond." *Id.* Indeed, Quality Custom's claim is that it is entitled to recover under the bond for unpaid labor, supplies, and equipment. *See* D. Am. Mot. Ex. A at § 1 (binding surety "to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms").[6]

---

[6]In several places in its response brief, Quality Custom argues that the forum-selection clause is not a "traditional" or "true" forum-selection clause. *See* P. Resp. 2, 6. Quality

Quality Custom argues that arbitration cases are inapposite because there is a federal policy favoring arbitration. But the rationale of direct-benefits estoppel is not based on a federal policy favoring arbitration. The rationale is based more generally on principles of contract and agency law. *See, e.g., Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003) ("Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so."). This is why the doctrine has been applied not just to arbitration clauses but also to forum-selection clauses and other contractual provisions. *See, e.g., LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F.Supp.2d 147, 155 (E.D.N.Y. 2012) (noting that several courts "have espoused the general principle that a party is estopped from denying a contract provision when it has directly benefited from the contract"). Additionally, Quality Custom ignores that there is a policy favoring the enforcement of forum-selection clauses. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-14 (1972) (discussing history of forum-selection clauses and noting that forum-selection clauses should be honored "absent some compelling and countervailing reason").

---

Custom does not cite any authority for its characterization, but it appears to argue that, because the clause provides that the suit be brought in a particular state but not a particular court, it is not a valid forum-selection clause. This argument lacks force. "By definition, a forum selection clause is '[a] contractual provision in which the parties establish the place (such as the country, state, or type of court) for specified litigation between them.'" *BBC Chartering & Logistic GmbH & Co. K.G. v. Siemens Wind Power A/S*, 546 F.Supp.2d 437, 442 (S.D. Tex. 2008) (quoting *Black's Law Dictionary* 681 (8th ed. 2004)). That the forum-selection clause at issue specifies a state but not a particular court does not render it invalid or unenforceable. Quality Custom does not challenge the validity or enforceability of the forum-selection clause in any other way.

The court therefore holds that Quality Custom is bound by the bond's forum-selection clause.

## C

The court now considers whether there are extraordinary circumstances unrelated to the convenience of the parties that clearly disfavor a transfer.  Quality Custom makes no effort to show that there are such extraordinary circumstances here.  Instead, it merely argues that *Atlantic Marine* does not apply and that the court should conduct the typical § 1404(a) analysis.  It incorporates by reference its response to Travelers' original motion to dismiss and transfer, but that response also fails to demonstrate extraordinary circumstances. Virtually all of Quality Custom's arguments are about the convenience of the parties.  As to public-interest factors implicated by the motion to transfer, Quality Custom concedes that "[t]here is no public policy favoring one forum over another in this case," and that the surety bond "does not mandate that the law of any particular jurisdiction . . . be applied."  P. 10/30/2013 Resp. 7.[7]  Because Quality Custom has failed to demonstrate that there are extraordinary circumstances unrelated to the convenience of the parties that clearly disfavor a transfer, the court holds that the case should be transferred under § 1404(a).

---

[7]The court cites Quality Custom's original response brief, which was incorporated by reference.  The other citations to Quality Custom's response brief in this memorandum opinion and order refer to Quality Custom's February 4, 2014 response brief to Travelers' amended motion to transfer.

- 10 -

* * *

For the reasons explained, the court grants Travelers' amended motion to transfer venue, and it transfers this action to the Eastern District of Louisiana. The clerk of court shall effect the transfer according to the usual procedure.

**SO ORDERED.**

March 4, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE

- 11 -